FILED

SEP 3 0 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1        UNITED STATES BANKRUPTCY COURT

2        EASTERN DISTRICT OF CALIFORNIA

3            SACRAMENTO DIVISION

4   In re:                          )   Case No. 09-37635-B-13J
                                    )
5   HENRY APODACA,                  )
                                    )
6            Debtor(s).             )   Adversary No. 11-02093-B
                                    )
7   _____        )   DCN MFO-2
    HENRY APODACA,                  )
8                                    )
             Plaintiff(s),          )
9                                    )
    vs.                             )   Date:  July 12, 2011
                                    )   Time:  09:32 a.m.
10  JP Morgan Chase Bank, N.A.,     )   Place: U.S. Courthouse
    Chase Home Finance, LLC, Long   )          Courtroom 32
11  Beach Mortgage Company,         )          501 I Street
    William G. Malcolm, and Does    )          Sacramento, CA 95814
12  1-10,                           )
             Defendant(s).          )
13  _____        )

14        **MEMORANDUM DECISION ON MOTION TO DISMISS**

15       This matter came on for final hearing on July 12, 2011, at 09:32

16  a.m.  Appearances are noted on the record.  At the conclusion of the

17  hearing the court took the matter under submission.   The following

18  constitutes the court's findings of fact and conclusions of law,

19  pursuant to Federal Rule of Bankruptcy Procedure 7052.

20                          **DECISION**

21       The motion is granted in part and denied in part to the extent

22  set forth herein.  The first, second, fourth and fifth claims for

23  relief set forth in the initial complaint (the "Complaint") filed on

24  February 8, 2011 are dismissed as to moving defendants JPMorgan Chase

25  Bank, N.A. ("JPMorgan") and Chase Home Finance, LLC ("Chase," and,

26

27

28                          -1-

1  collectively with JPMorgan, the "Moving Defendants")[1] with leave to
2  amend.   The third claim for relief for violation of 11 U.S.C. § 362(k)
3  is dismissed as to all defendants without leave to amend.   All claims
4  for relief set forth in the Complaint are dismissed as to defendant
5  Long Beach Mortgage Company ("Long Beach") without leave to amend.   On
6  or before October 26, 2011 the plaintiff shall file a first amended
7  complaint that is consistent with this ruling.   If the plaintiff
8  wishes to include in the complaint claims for relief against Long
9  Beach the plaintiff shall file a motion requesting permission to
10 include those defendants in the first amended complaint, shall file
11 and serve said motion on or before October 18, 2011, and shall set
12 said motion on the first available calendar which provides proper
13 notice to parties in interest.   If filed, the motion to amend shall
14 include as an exhibit an unfiled copy of amended complaint the
15 plaintiff wishes to file as to Long Beach.   If filed, the motion to
16 amend will also toll the October 26, 2011 deadline for filing the
17 first amended complaint set forth above pending the resolution of the
18 hearing on the motion to amend.

19                          **FACTUAL BACKGROUND**

20     By this motion the Moving Defendants move for dismissal of this
21 adversary proceeding under Fed. R. Civ. P. 12(b)(6), made applicable
22 to this adversary proceeding by Fed. R. Bankr. P. 7012.

23     The Complaint alleges five causes of action for 1.) Declaratory

24

25     [1]The Complaint confusingly refers to JPMorgan Chase Bank as
26 both "Chase" and JPMorgan.  See Compl. ¶¶ 11 and 23.   The
   Complaint also refers to Chase Home Finance, LLC as "Chase."   See
27 Compl. ¶ 12.

28                              -2-

Relief, 2.) Violation of 11 U.S.C. § 362(a), 3.) Violation of 11 U.S.C. § 362(k)(1), 4.) Violation of the Real Estate Settlement Procedures Act ("RESPA"), and 5.) Civil Conspiracy.

The Complaint bases its claims for relief on the following alleged facts.  The plaintiff debtor Henry Apodaca ( the "Debtor") owns real property located at 1025 Milton Street, West Sacramento, CA 95605 (the "Property").  The Property is the Debtor's personal residence.  On March 13, 2006, the Debtor executed a promissory note (the "Note") payable to the order of Long Beach Mortgage Company ("Long Beach").  The Note was secured by a deed of trust (the "Deed of Trust") in the Property.  The Note provided for monthly payments over a period of thirty years.

The Debtor commenced this chapter 13 bankruptcy case (the "Bankruptcy Case") on August 19, 2009.  JPMorgan filed a secured claim (the "Claim") in the Bankruptcy Case on November 5, 2009.  The Claim, as initially filed, claimed a balance of $237,078.57, and included a claim for $25,331.26 in pre-petition arrears.  According to the Claim, the pre-petition arrears were attributable to five missed monthly payments of $1,591.68 and eight missed monthly payments of $2,016.41.  JPMorgan later amended the Claim on December 2, 2009 (the "Amended Claim").   The Amended Claim is filed in the amount of $237,078.57.  The Amended Claim includes a $20,691.84 claim to pre-petition arrears, which, according to the Amended Claim, reflect thirteen missed payments of $1,5901.68. Compl.,¶ 30.  The Debtor alleges that by filing the Claim, JPMorgan asserted that it had obtained rights in the Note and Deed of Trust from Long Beach.  The Debtor alleges upon

-3-

information and belief that JPMorgan actually did not obtain any
rights in the Note or Deed of Trust, because it did "not provide
either an assignment of either the ownership nor Servicing rights" to
the Debtor "as required by law."  Compl. ¶ 31.

The Debtor confirmed a chapter 13 plan in the Bankruptcy Case on
November 5, 2009.  The Debtor confirmed a modified plan in the
Bankruptcy Case on September 10, 2010.  The plan provided for payment
of the obligation underlying the claim with an ongoing monthly payment
of $1,606.85 and payment of a total of $21,000.00 in pre-petition
arrears.

The Debtor alleges that "Defendant, as a matter of normal
business practice, conducts an 'Escrow Analysis' pursuant to RESPA
upon notice of a bankruptcy filing."  Compl., ¶ 37.  An escrow
analysis allegedly analyzes the advances made by the lender in the
twelve months prior to the bankruptcy filing for the purposes of
paying of property taxes, insurance and other costs related to the
security for a loan and projects those costs into the future in order
to determine the amount that the borrower will be required to pay for
those costs in the future.  The escrow analysis also allegedly
compares the amounts advanced by the lender for these costs to the
amounts paid into an escrow account by the borrower for payment of
those costs; if the result shows that the lender has advanced funds in
excess of what the borrower has paid into the escrow account, the
lender will generate a notice of a post-petition increase in the
regular monthly mortgage payment.  The increase is allegedly intended
to recoup the advances paid by the Defendant in excess of the payments

-4-

made by the borrower to the escrow account.  The notices specifying
the post-petition increases in payments are sent to the debtor
borrower and the chapter 13 trustee.

The Debtor alleges that as a result of receiving a notice of a
post-petition payment increase, the chapter 13 trustee takes action
which results in the collection by the trustee of the increased
payment as specified in the lender's notice, which action includes
objections to confirmation or motions to dismiss if the debtor is not
proposing to pay the full amount of the increased payment.  The Debtor
alleges that in generating and sending the notices based on post-
petition escrow analyses as described above, the "Defendants" fail to
distinguish between pre- and post-petition escrow advances and
improperly collect on a claim for a pre-petition debt through the
ongoing monthly mortgage payment.  The Debtor alleges that this
practice violates the automatic stay of 11 U.S.C. § 362(a).

In this case, the Debtor alleges that "Defendants" "have not
provided either an Annual Disclosure Accounting Statement or a Special
Escrow Analysis asserting a resulting negative escrow analysis as
required under the Real Estate Settlement Procedures Act."  Compl. ¶
29.  Instead, on September 22, 2010 "defendant Chase" allegedly
notified the chapter 13 trustee of post-petition increases in the
monthly loan payment.  According to the notice given by "defendant
Chase," the mortgage payment increased from $1,606.85 to $1,940.25
effective October 1, 2010. Compl., ¶ 28.  The Debtor alleges that the
increase in the monthly mortgage payment constitutes a violation of
the automatic stay of 11 U.S.C. § 362(a) because by increasing the

monthly mortgage payment the "defendants" are attempting to recover a pre-petition shortage in the Debtor's escrow account.  The Debtor alleges that this alleged post-petition attempt to recover a pre-petition debt violates the automatic stay.

The Debtor also alleges that the "Defendants" violated RESPA by (1) failing to notify the Debtor when the note and deed of trust were transferred; (2) assessing more "risk" in the Defendants' escrow analysis calculations than is allowed by RESPA; (3) improperly accessing the escrow account for payment of property taxes and insurance; (4) failing to credit back charges improperly force-placing insurance when the Debtor had paid for insurance themselves; and (5) performing an improper escrow analysis that resulted in incorrect notices of increase in payments.  The Debtor specifically cites 12 U.S.C. § 2604 as the basis for his claims for RESPA violations.

Finally, the Debtor alleges that the "assignees and/or successors in interest" to the note and deed of trust, were assisted and represented by "Defendants" in a civil conspiracy for the purpose of recouping pre-petition claims from post-petition estate property resulting in systematic injury to debtor by means of the allegedly improper escrow analyses described above, concealing the post-petition collection of pre-petition claims, and objecting to confirmation of chapter 13 plans based on the improper escrow analyses.

//

//

//

-6-

1

**ANALYSIS**

The Law Applicable to A Motion to Dismiss

The following sets forth the legal standard for dismissal of a complaint where the complaint fails to state a claim on which relief may be granted:

> The purpose of a motion to dismiss under Rule 12(b)(6) of the
> Federal Rules of Civil Procedure, made applicable here under Fed.
> R. Bankr. P. 7012, is to test the legal sufficiency of a
> plaintiff's claims for relief.  In determining whether a
> plaintiff has advanced potentially viable claims, the complaint
> is to be construed in a light most favorable to the plaintiff and
> its allegations taken as true.  Scheuer v. Rhodes, 416 U.S. 232,
> 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974);  Church of Scientology of
> Cal. v. Flynn, 744 F.2d 694, 696 (9th Cir.1984). . .

Quad-Cities Constr., Inc. v. Advanta Bus. Servs. Corp. (In re
Quad-Cities Constr., Inc.), 254 B.R. 459, 465 (Bankr. D. Idaho 2000).

In addition, under the Supreme Court's most recent formulation of Rule 12(b)(6), a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." Ashcroft v. Iqbal,129 S .Ct 1937, 1954 (2009). Instead, a complaint must set forth enough factual matter to establish plausible grounds for the relief sought. See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007).  ("[A] plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

-7-

Factual allegations must be enough to raise a right to relief above the speculative level. _Id._, citing to 5 C. Wright & A. Miller, _Fed. Practice and Procedure_ § 1216, at 235-36 (3d ed. 2004) ("[T]he pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

In addition, the court notes the following:

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. _Navarro v. Block_, 250 F.3d 729, 732 (9th Cir. 2001); _Balistreri v. Pacifica Police Dep't._, 901 F.2d 696, 699 (9th Cir. 1988). . . the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." _Sprewell v. Golden State Warriors_, 266 F.3d 979, 988 (9th Cir. 2001). Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." _Warren v. Fox Family Worldwide, Inc._, 328 F.3d 1136, 1139 (9th Cir. 2003); _accord_ _W. Mining Council v. Watt_, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." _Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters_, 459 U.S. 519, 526;

-8-

103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). . .
Toscano v. Ameriquest Mortg. Co., 2007 U.S. Dist. LEXIS 81884 (E.D. Cal. 2007).

If a Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted, "[the] court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, the court is not required to grant leave to amend when an amendment would be futile. See Toscano, 2007 U.S. Dist. LEXIS 81884 (citing Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002)).

## Dismissal of Long Beach Without Leave to Amend

Before turning to an analysis of each of the enumerated claims for relief set forth in the Complaint, the court first addresses the inclusion of named defendant Long Beach in the Complaint.  The Complaint identifies Long Beach as the original lender and holder of the Note, but does not contain any specific allegations relating to conduct of the Long Beach Defendant with respect to the Debtor's Bankruptcy Case.  Instead, the allegations in the Complaint only allege that Chase and/or JPMorgan filed the Claim and the Amended Claim in the Bankruptcy Case.  Chase and/or JPMorgan are also the only named defendants specifically identified as giving notice to the Debtor of an increase in his monthly mortgage payment.  (See Compl., ¶ 28).  The Complaint alleges that only Chase and/or JPMorgan have taken

1  any active role with respect to the Claim and the Amended Claim.

2      To the extent that any conduct of the Long Beach Defendant is

3  alleged in the Complaint at all, the Long Beach Defendant is only

4  vaguely and ambiguously identified with the label "Defendants,"

5  "Defendant" or "defendant."  In light of the allegations in the

6  Complaint which indicate that Chase and JPMorgan are the only named

7  defendants which have actively sought to enforce the Amended Claim in

8  this case, the Debtor's vague allegations are insufficient to state

9  any plausible claim for relief as against the Long Beach.

10  <u>Dismissal of Third Claim for Relief (Violation of 11 U.S.C. §</u>

11  <u>362(k)(1)) Without Leave to Amend</u>

12      The Moving Defendants' request for dismissal with respect to the

13  third claim for relief is granted, and the claim is dismissed without

14  leave to amend as to all named defendants, but without prejudice to

15  the inclusion of a claim for violation of the automatic stay in an

16  amended complaint, as discussed, <u>infra</u>, in connection with the second

17  claim for relief.

18      The third claim for relief alleges a violation of 11 U.S.C. §

19  362(k)(1).  Section 362(k)(1), however, does not create a right of

20  action but governs the available remedies and measure of damages for a

21  violation of a stay provided by § 362.  As a result, because the

22  Debtor cannot state a claim for a violation of § 362(k)(1), the claim

23  is dismissed without leave to amend.

24  <u>Dismissal of Chase and JPMorgan With Leave to Amend</u>

25      Having addressed the Debtor's allegations with respect to the

26  Long Beach Defendant, the court now addresses each of the Debtor's

27

28  -10-

first, second, fourth and fifth claims for relief with respect to the
Moving Defendants.

### 1. First Claim for Relief: (Declaratory Relief)

This claim for relief is dismissed as to the Moving Defendants
with leave to amend.

The facts alleged by the Debtor establishes the existence of a
dispute between the Debtor and some, if not all, of the named
defendants regarding the correct amount of the ongoing monthly
payments to be made by the Debtor under his note and deed of trust
obligations, the correct method by which the escrow analysis should be
prepared, and the proper amount of the pre-petition claim based on the
note and deed of trust obligation.

The first claim for relief fails, however, to distinguish
adequately among the named defendants with respect to the
aforementioned disputes.  The Debtor has not alleged facts supporting
a need for declaratory relief between himself and all of the named
defendants, and, as a result, the defendants have not been given fair
notice of the claims being alleged against each of them.  Erickson v.
Pardus, 551 U.S. 89, 93 (2007)(under Fed. R. Civ. P. 8, the plaintiff
need only provide a short and plain statement of the claim for relief,
but must also give the defendant fair notice of the claims being
alleged against it); see also Gauvin v. Trombatore, 682 F.Supp. 1067,
1071 (N.D. Cal. 1988)(allegations lumping all defendants together did
not satisfy Rule 8(a)(2)).  The Debtor's allegations that a
controversy exists between him and "Defendants" is insufficient.  It
appears, based on the Debtor's general allegations, that his claim for

declaratory relief is relevant only to the Debtor and either Chase or JPMorgan, whichever is the current holder of the Amended Claim based on the Note and Deed of Trust obligation.  However, the Debtor is given leave to amend to clarify the exact nature of the dispute between himself and each of the named defendants, to the extent such a dispute exists.

      *2.  Second Claim for Relief (Violation of 11 U.S.C. § 362(a))*

      This claim for relief is dismissed as to Chase and JPMorgan with leave to amend.

      The Moving Defendants argue that the facts alleged by the Debtor do not constitute a violation of the automatic stay of 11 U.S.C. § 362(a).

      The recent decision of the Ninth Circuit Bankruptcy Appellate Panel in <u>In re Zotow</u>, 432 B.R. 252 (9th Cir. BAP 2010).  involved facts similar to those alleged in the instant adversary proceeding. The Zotows were debtors in chapter 13 who objected to a proof of claim filed by BAC Home Loans Servicing, LP ("BAC").  The Zotows objected to BAC's claim on the ground that the Zotows' pre-petition escrow account shortages should have been listed in the proof of claim.  Rather than include the shortage in the proof of claim, BAC had instead performed an escrow analysis and had sent the debtors and the chapter 13 trustee a post-petition notice which indicated an increase in their ongoing monthly installment payment into the escrow account due to the pre-petition shortage.  The notice stated that it was being furnished for informational purposes only and should not be construed as an attempt to collect against the debtors personally.  The notice also stated

-12-

that if the debtors were involved in a chapter 13 proceeding the debtors were required to obey all orders of the court in the event that the amount specified in the notice conflicted with any order or requirement of the court.  Based on the notice, the chapter 13 trustee made several ongoing post-petition installment payments to BAC from the debtors' plan payments based on the amount of the payments as specified in the notice.  The chapter 13 trustee also objected to confirmation of the debtors' chapter 13 plan on the ground that the debtors' proposed plan payment was insufficient to fully fund the plan based on the increased payment amount set forth in the notice sent by BAC.

The debtors argued that BAC's attempt to collect the escrow shortage, a pre-petition debt, by increasing the ongoing post-petition installment payment through the chapter 13 plan rather than including the escrow shortage in the proof of claim constituted a violation of the automatic stay.  Following an evidentiary hearing the bankruptcy court concluded that BAC should have included the pre-petition escrow shortage in its proof of claim, but also found that BAC had not violated the automatic stay.

The BAP affirmed the bankruptcy court's conclusion that BAC had not violated the automatic stay.  As the BAP stated,

> the automatic stay does not prevent all communications between a creditor and the debtor. Morgan Guar. Trust Co. of N.Y. v. Am. Sav. and Loan Ass'n, 804 F.2d 1487, 1491 (9th Cir.1986); Connor v. Countrywide Bank, N.A. (In re Connor), 366 B.R. 133, 136 (Bankr.D.Hawaii 2007). Whether a communication is a permissible

-13-

1   or prohibited one is a fact-driven inquiry which makes any bright

2   line test unworkable. See Henry v. Assocs. Home Equity Servs.,

3   Inc., 272 B.R. 266, 278 (C.D.Cal.2002) (whether creditor's

4   activities involved coercion or harassment is fact-specific

5   inquiry); Cousins v. CitiFinancial Mortgage Co. (In re Cousins),

6   404 B.R. 281, 287 (Bankr.S.D.Ohio 2009) (noting that determining

7   whether a violation of the automatic stay occurs can be

8   complicated).

9   Zotow, 432 B.R. at 258.

10      The BAP went on to identify prohibited communications as "those

11  where direct or circumstantial evidence shows the creditors actions

12  were geared toward collection of a pre-petition debt, were accompanied

13  by coercion or harassment, or otherwise put pressure on the debtor to

14  pay. . . . [M]ere requests for payment and statements simply providing

15  information to a debtor are permissible communications that do no run

16  afoul of the stay." Id. "In the end, one distinguishing factor

17  between permissible and prohibited communications is evidence

18  indicating harassment or coercion.  When such evidence is present, a

19  disclaimer on the communication that it was being sent 'for

20  informational purposes only' is ineffective." Id. at 259.  The BAP

21  identified three significant facts in Zotow that informed its

22  conclusion that the post-petition notice sent by BAC did not violate

23  the automatic stay: (1) the notice was not in the nature of an invoice

24  and merely set forth the fact of the debt; (2) BAC did not send the

25  notice with a payment coupon or envelope and without any informational

26  component; and (3) BAC sent only one notice to the debtors, and the

27

28                                -14-

information contained in that notice was information that the debtors
would need to propose a feasible chapter 13 plan.  _Id._ at 259-60.  The
_Zotow_ court also found that BAC did not violate the automatic stay by
receiving increased post-petition payments from the chapter 13
trustee.

     In the instant case, the Debtor merely alleges that JPMorgan or
Chase sent a notice of a post-petition increase in the ongoing monthly
mortgage payment.  There are no allegations that support the
proposition that the sending of the single post-petition notice
involved harassment or coercion. Other than the sending of the single
notice regarding a payment increase, the Complaint is devoid of other
allegations which, construed in the light most favorable to the
Debtor, would show coercive or harassing behavior on the part of any
of the Moving Defendants. The court concludes that the alleged facts
are simply insufficient to state a claim for violation of the
automatic stay.  The court does not reach the foregoing conclusion
because the sending of a single notice regarding post-petition payment
increases can never be a violation of the automatic stay; the court
does not foreclose the possibility that a creditor's sending of a
notice to a debtor, whether informational or not, may rise to the
level of coercion or harassment.  As the _Zotow_ court pointed out,
whether communications are prohibited or permitted or whether they
rise to the level of coercion or harassment are fact-driven inquiries
for which there are no bright-line rules.

     In addition, the allegations in the Complaint and under the
second claim for relief are not sufficient to state a claim upon which

-15-

relief may be granted because, as with the first claim for relief,
they do not give each of the Moving Defendants and the other named
defendants fair notice of the claims being alleged against them.  As
with the first claim for relief, the general allegations in the
Complaint and in the second claim for relief are replete with vague
references to "Defendants," "defendants" and "Defendant," with no
apparent effort made to distinguish between each of the three
defendants named in the caption of the Complaint.

As a result, the second claim for relief is dismissed with leave
given to the Debtor to amend the Complaint to specify which of the
named defendants committed the acts which allegedly violated the
automatic stay and, to the extent that they exist, to allege
additional facts regarding the sending of the notice or other acts
committed in violation of the automatic stay.

3. *Fourth Claim for Relief (Violation of Real Estate Settlement*
*Practices Act (RESPA))*

This claim is dismissed as to the Moving Defendants with leave to
amend.

The fourth claim for relief alleges that the "Defendants"
violated RESPA by (1) failing to notify the Debtor when the note and
deed of trust were transferred; (2) assessing more "risk" in the
"Defendants'" escrow analysis calculations than is allowed by RESPA;
(3) improperly accessing the escrow account for payment of property
taxes and insurance; (4) failing to credit back charges improperly
force-placing insurance when the Debtor had paid for insurance
himself; and (5) performing an improper escrow analysis that resulted

-16-

1  in incorrect notices of increase in payments.  However, the Debtor

2  cites only 12 U.S.C. § 2604 in connection with the claim.  Section

3  2604, however, governs the form and distribution of special

4  information booklets regarding the nature and costs of real estate

5  settlement services.

6       In the context of a motion for a more definite statement under

7  Fed. R. Civ. P. 12(e), the Ninth Circuit has stated, "even though a

8  complaint is not defective for failure to designate the statute or

9  other provision of law violated, the judge may in his discretion . . .

10  require such detail as may be appropriate in the particular case."

11  McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).  Although the

12  Moving Defendants have filed a motion to dismiss rather than for a

13  more definite statement, the court finds that McHenry v. Renne is

14  applicable here, insofar as a motion for a more definite statement and

15  a motion to dismiss under Rule 12(b)(6) are both concerned with the

16  sufficiency of the plaintiff's pleading.  In this case, the court

17  dismisses the fourth claim for relief with leave to amend as to the

18  specific provisions of RESPA that the Debtor asserts were violated by

19  one or more of the Moving Defendants because RESPA is a complex

20  statute that covers several sections of Chapter 27 of the United

21  States Code.  Requiring the Debtor to specify the specific provisions

22  that he believes were violated prevents both the Moving Defendants and

23  the court from guessing which provisions of RESPA the Debtor believes

24  the Moving Defendants violated and gives fair notice to all parties

25  and the court of the claims being asserted.

26       The fourth claim for relief is also dismissed with leave to amend

27

28                                   -17-

because, like the first and second claims for relief, it is replete with vague references to "Defendants" and "defendants" without any distinction between the four named defendants in the caption of the Complaint. The allegations underlying the fourth claim for relief do not give the remaining defendants fair notice of the claims being asserted against them. As a result, the fourth claim for relief is dismissed with leave given to the Debtor to amend the claim to specify which of the remaining named defendants violated RESPA and the specific manner in which they violated RESPA.

>    *4.   Fifth Claim for Relief (Civil Conspiracy)*

This claim is dismissed as to the Moving Defendants with leave to amend.

Civil conspiracy is not an independent tort. Instead it is "merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability. Each member of the conspiracy becomes liable for all acts done by other pursuant to the conspiracy, and for all damages caused thereby." <u>Favila v. Katten Muchin Rosenman LLP</u>, 188 Cal.App.4th 189, 206 (2010). A civil conspiracy is "activated by the commission of an actual tort." <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 511 (1994).

In addition, "[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act. The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. However, actual knowledge of the planned tort, without more, is insufficient to

-18-

serve as the basis for a conspiracy claim.  Knowledge of the planned

tort must be combined with intent to aid its commission." Id. (citing

Kidron v. Movie Acquisition Corp., 40 Cal.App.4th 1571, 1582 (1995).

Here, the Debtor alleges that the "Defendants assist the

assignees and/or successors in interest" to the promissory note and

deed of trust in connection with recouping pre-petition claims from

post-petition estate property resulting in systematic injury to

debtors by means the allegedly improper escrow analyses described

above, concealing the post-petition collection of pre-petition claims,

and objecting to confirmation of chapter 13 plans based on the

improper escrow analyses. Additionally, the Debtor alleges "some

Defendants systematically earn attorney fees based on a privity with

each of the assignees and/or successors in interest during this

bankruptcy case."  These allegations, however, are not sufficient to

state a claim that any of the named defendants were involved in a

civil conspiracy.  The Debtor has not alleged any agreement between

any of the named defendants to a common plan or design to commit a

tortious act, nor has he alleged that any of the named defendants had

actual knowledge that a tort was planned and that they concurred in

the tortious scheme with knowledge of its unlawful purpose.  This

claim for relief also suffers from the same defects as the first,

second and fourth claims for relief in that it also fails to

distinguish between any of the named defendants with respect to the

alleged civil conspiracy.  For these reasons, the court dismisses the

fifth claim for relief as to the Moving Defendants with leave to

amend.

1    In amending the fifth claim for relief, the Debtor should also be
2    aware of the procedural hurdle of Cal. Civ. Code § 1714.10 with
3    respect to named defendant William Malcolm.   Section 1714.10 prohibits
4    claims for relief against an attorney for civil conspiracy which is
5    based on the attorney's representation of the client from being
6    included in a complaint unless the court enters an order allowing the
7    pleading that includes the claim for civil conspiracy after the court
8    determines that the party seeking to file the pleading has established
9    a reasonable probability of prevailing in the action.   Cal. Civ. Code
10   § 1714.10(a).   There are two exceptions to the procedural hurdle of §
11   1714.10(a): (1) where the attorney has an independent legal duty to
12   the plaintiff, or (2) the attorney's acts go beyond the performance of
13   a professional duty to serve the client and involve a conspiracy to
14   violate a legal duty in furtherance of the attorney's financial gain.
15   See also Favila, 188 Cal. App. 4th at 207-210.

16   The court cautions the Debtor that the first amended complaint
17   must clearly identify which of the remaining named defendants violated
18   their legal rights and the specific manner in which they violated
19   those rights; if the Debtor fails to do so those defendants who are
20   not clearly connected with the acts complained of will be dismissed
21   without leave to amend.

22                          *5.  Leave to Amend*

23   The court recognizes that it "should grant leave to amend even if
24   no request to amend the pleading was made, unless it determines that
25   the pleading could not possibly be cured by the allegation of other
26   facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc),

27

28                                  -20-

quoting <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir. 1995).  In other words, the court is not required to grant leave to amend when an amendment would be futile. <u>See</u> <u>Toscano</u>, 2007 U.S. Dist. LEXIS 81884 (<u>citing</u> <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 898 (9th Cir. 2002)).  In this case, the court dismisses Long Beach without leave to amend because the fact that Long Beach was the original lender has nothing to do with the present controversy regarding enforcement of a secured claim in the bankruptcy case.  Furthermore, the deficiencies in the Debtor's claim for relief under 11 U.S.C. § 362(k)(1) cannot be cured by further factual enhancement as § 362(k)(1) creates no right of action.  Furthermore, the dismissal of the Debtor's claim under § 362(k)(1) is without prejudice to the Debtor's ability to amend his claim for violation of the automatic stay as set forth in this memorandum.

The court will issue a separate order consistent with this ruling.

Dated: **SEP 3 0 2011**

United States Bankruptcy Judge

-21-

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

## CERTIFICATE OF SERVICE

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Vincent Novak
425 Market St
San Francisco, CA 94105

Henry Apodaca
1025 Milton St
West Sacramento, CA 95605

OCT - 3 2011

DATED: _____

By: _____
Deputy Clerk